Arguments not to exceed 15 minutes per side, Mr. Manhas for the appellant. Good morning, Your Honors. Good morning. May it please the Court, Robbie Manhas for Petitioner-Appellant Rommel Ingram. I'd like to reserve three minutes for rebuttal. Very well. Mr. Ingram is entitled to habeas relief based on two independent errors affecting his conviction. The first is ineffective assistance of counsel. Probable cause did not exist to arrest Mr. Ingram, and neither his trial counsel nor his appellate counsel challenged his arrest on this basis. Second, the trial court denied Mr. Ingram his right to a public trial when it closed the courtroom completely for the testimony of a key government witness. This was erroneous because the trial court did not support its decision by making findings or considering reasonable alternatives as the Supreme Court has instructed. Importantly, the state courts here did not review either of these claims on the merits. Therefore, this Court's review is de novo. HEDPA standard of review does not apply. So the state courts found procedural default under the state procedural default rules. Is that your position? That's correct. All right. We're bound by that state ruling, are we not? No, Your Honor. I mean, absent manifest injustice, cause and prejudice? No, Your Honor. I mean, isn't that what the procedural default is? No, Your Honor. There's certain requirements that have to be satisfied for procedural default to be recognized by federal courts. And so, for example, with regard to the ineffective assistance claims, one of those fundamental requirements was not met, and that's that the procedural default ground needs to be an adequate and independent state ground. And the particular requirement there is that it has to be a firmly established rule that the defendant would appeal. Isn't it firmly established in Michigan practice that ineffective assistance of trial counsel is to be brought on direct appeal? I believe there, even if that's the case, Your Honor. No, is that the case? It's my understanding that that's the case. I was on the court for 16 years, and I think that's the way I was ruling. Am I wrong? Well, there's a bit of confusion because the trial court here didn't separate out the ineffective assistance claims in terms of trial counsel and appellate. Okay. I'm just asking about, I mean, there may be different standards, appellate ineffective assistance of counsel and trial ineffective assistance of counsel. Let's just take trial ineffective assistance of counsel. And are you going to disagree with me that the Michigan practice is that that is to be appealed on direct appeal, as opposed to federal practice? Federal practice, we require it in a collateral proceeding or allow it in collateral proceedings, but Michigan doesn't. Am I correct or not? Granted, Your Honor, that's correct. But that's irrelevant here because, in that case, there's also ineffective assistance of appellate counsel. All right. Well, then we switch on to the appellate counsel. I mean, we'll get rid of one claim, and then we'll go to the next one. Indeed, Your Honor. I think we analyze them separately, that's all. Yes, Your Honor. But I think that it's clear because Michigan state courts did not have a firmly established rule that ineffective assistance of appellate counsel claims need to be brought in pro se supplemental direct appeal briefs, that that claim was not defaulted. In fact, that's contrary to this Court's precedent, en banc precedent in Guillemette, where it's consistently recognized that this Michigan court rule for good cause does not apply to ineffective assistance of appellate counsel claims. And so once we have no default of ineffective assistance of appellate counsel, that can serve as cause to excuse the default of any defaulted ineffective assistance of trial counsel claims. So perhaps to move to the merits of the ineffective assistance grounds, it's notable here that the state has not defended the arrest for actually having probable cause. They've made no argument in their brief that there was probable cause to arrest Mr. Ingram, and that's for good reason. The police reports that we have in the record are riddled with inconsistencies. They get the date of Mr. Ingram's arrest wrong, they get the date of robberies being investigated wrong, and most importantly, they contain a manifest contradiction about the basis for why Mr. Ingram was arrested. Specifically, the Farmington Hills police reports say that Mr. Ingram was arrested because he was identified in a lineup for the robbery of the wireless giant telephone store, and they say that they were instructed by St. Clair Shoresports. Was that a photo array or an in-person lineup? It appears to be a photo lineup that was given to the victim of the wireless giant store, and we know from the St. Clair Shores police reports that Mr. Ingram was not identified for that robbery. They explicitly state that Mr. Ingram, the victim, could not make an identification. So he was identified for a different robbery. Is that what your position is? I mean, he was identified for one of the robberies, right, and the police knew that. They also had the car. The car that was seen at one of the robberies showed up while your client was under surveillance. And the third thing, what is the third thing? The co-defendant, I guess, or I don't know. I think there were three, three initiatives of probable cause, and two of which are, one, the car that was seen at one of the robberies showed up at the defendant's, or near the defendant, and the identification for one of the robberies. Why isn't that probable cause? Well, first of all, Your Honor, the state has not raised these arguments. They've forfeited any argument that there was probable cause. I'll ask them if they forfeited. They've not raised it in your brief, Your Honor. They've made no such argument. They've made arguments about even if there was no probable cause, there are reasons why perhaps a counsel would not be ineffective for not raising that claim. But they've made no argument that there was probable cause. And second of all, it is true that the car situation is actually a mistake. The car that was associated with the robbery was a Ford Thunderbird, and he was arrested in a gold Taurus, so that there actually was not. But wasn't there a Thunderbird that pulled up to the defendant or got in his vicinity or whatever it was, and they said that's the same car that was in the robbery? And he's under surveillance. And to see the car that is identified as the robbery car pull up, and the defendant's there, and it seems to me that that's probable cause right there. Well, it is true that he was under surveillance and that the Ford Thunderbird showed up at his residence. And they identified it as the car that was used in the robbery. But notably, Your Honor, the police did not try to arrest Mr. Ingram at that point. They apparently didn't think that he had probable cause. They're trying to get even more evidence because the attorney would say you don't have enough yet. Was he in the car that pulled up to the residence while it was being surveilled? I do not believe so. I believe that he was, well, let me correct the Honor. He may have gotten in later, but when it arrived at the property, I do not believe he was in the car. He got in the getaway car. At most, the probable cause standard is what a reasonable, prudent man would have a reasonable suspicion. That's guilt by association, Your Honor. I mean, isn't probable cause a low standard? I mean, you're arguing, well, he's not guilty beyond a reasonable doubt, but all the officers need is probable cause that a crime was committed and the defendant committed it, which is not that high of a standard. Your Honor, it is, but it does require a threshold, and apparently the state does not believe that there was one. I'll ask the state. We'll find out from them. And I would just maintain that with regard to this car, that's guilt by association. That's not probable cause for associating him with the arrest. It may have been another thing if he owned the Ford Thunderbird, but he did not, and that was not the car that he was arrested in. Let me ask you about another one of the points that was posited, I believe, as a basis of probable cause. It was unclear for me from the record, but there was a reporting of a conversation between two individuals allegedly bragging about having been involved in robberies. And that was styled as a report of a confidential informant, and obviously a confidential informant has to meet certain threshold levels. So was this addressed at the lower level? I understand that the court didn't have a hearing but ruled on papers perhaps, but talk to me a little bit about why that prong is insufficient as one of the bases of probable cause. Well, to address your first point, no, this was never resolved in the state courts precisely because his counsel never challenged the legality of the arrest based on lack of probable cause. But that does not suffice for probable cause. First, again, I would mention the state has not raised that. But second of all, as you mentioned, the mere fact that there's a confidential tip given, it's well-recognized in the court, so that alone does not establish probable cause. It has to have... Alone, you've got a couple other elements, too. You've got the car, and then you've got the identification. I mean, even if the confidential informant's statement that he overheard the defendant brag about doing these robberies was itself not sufficient, when combined with the other two matters, why isn't that? Because we do combine them, don't we, rather than look at them individually? Well, we do consider it's true what the aggregate knowledge of the arresting police officers were. But with regard to this identification, they've shown no awareness of this other identification. This is an identification that happened somewhere else. Is the Fourth Amendment subjective or is it objective? It's objective, but it takes into account... Sure, subjective knowledge doesn't make any difference in our analysis, right? We look to see what objectively was available. Well, I believe the correct standard is it's an objective analysis of what the subjective knowledge of the police officers involved was. So you look at what they knew and what was available to them, but you don't look at their specific intent of why they were arresting. But I suppose you're arguing that, notwithstanding everything that Judge Griffin has said, that this goes to your argument for ineffective assistance of counsel because there was no challenge or exploration of this at that level? Exactly, Your Honor. Aside from the fact that this is waived and so it shouldn't be considered here, it wasn't even explored because trial counsel and appellate counsel didn't look at these manifestly contradictory police reports and even explore these claims. I know that your yellow light is on, but I want to get at two quick things. What is your legal support for the idea that Pressley announced a new rule of law? The case was decided more than seven years ago, and if it is a new rule, I mean, what is there to support your assertion of this new rule? Well, I'd like to just, if I may, before I address that. And then I want to go to the court closing. Yes, but go ahead. I just want to lay out one thing that I think might not have been clear from the briefs, and I just want to clarify for this court, which is you've raised one of our arguments about why procedural default would be excused, and there's two of them. One is that it's a new rule of law. The other is if it wasn't, appellate counsel was ineffective for not raising that claim. But I want to emphasize the first one, which is that the Michigan State courts applied their procedural default rules incorrectly, because that's not an argument that procedural default is excused. That's an argument that there was no procedural default, and that means there's no need to show prejudice for the public trial right claim. If there was a violation of the public trial right, then that's it. There's a new trial. How does Presley even apply here? Presley, the Supreme Court issued a per curiam opinion in lieu of granting certiorari, and the holding in Presley, contrary to your argument, I see, is that the voir dire in a criminal case is part of the fundamental rights of a public trial, and the voir dire, therefore, must be made public, and we don't have a voir dire situation here. So I fail to see how Presley has any effect on the established rule of law, which was in Waller v. Georgia, which is a 1984 case, which established the firm right of the rule of public trials and the requirement that the judge articulate reasons for closing the courtroom. So tell me why Presley, the holding of which is that the voir dire of jury selection is subject to public trial, how that impacts your case, because that's the way I read the holding, and I don't see it having an impact on your case. Presley has multiple holdings. I don't think so. Well, let me explain to you why there is a holding that is relevant here, and that's because if you read the Presley opinion you'll see. I've read the Presley opinion. I have it in front of me too. You can tell me where your holding is. Sure. In Presley there was no reasonable alternatives that were offered by any side. Those were the facts. Exactly. There was no reasonable alternatives offered by any party, by anyone, and the Supreme Court says in Presley even when no one offers reasonable alternatives, the court has to do so. That's not a change in the law. Well, if you read our briefs, I think you'll see that there were a number of courts, including the Fourth Circuit en banc and the Second Circuit and a number of others that found exactly the opposite, that when a party does not object or does not offer reasonable alternatives, there's no onus on the court to do those things. And so the Supreme Court announced a rule that was contrary to what a slew of courts had said was not the case. So we have differing interpretations here of what Presley stands for, but in this case the court basically tailored the closure to this one witness, and the court said we're only going to close the court after this one witness where the government posited that there had been threats, maybe even death threats. I think your concern is that the court did not articulate that, but from the colloquy there, there is, at least in the record, the basis asserted by the government, which apparently the court adopted in that it proceeded to close after that witness. So what's wrong with that? Well, yes, the court only made two sentences, which is, all right, for this witness only I'm going to close the courtroom completely. And I would emphasize it was a complete closure. And there with that all right, doesn't that indicate that the court is adopting those reasons of the government? I know you can't go into the court's mind, but isn't that a reasonable inference to draw? Well, that's an inference you can draw, but I would say even if you draw that inference, that doesn't speak to the reasonable alternatives point, of which there were many. And we've laid out in our brief there's plenty of compromised positions where it's not a full closure. The courts will put up protective screens. They'll do other things that respect whatever interest there is in perhaps closing the courtroom while still also respecting the right to a public trial. And I would just emphasize that those reasonable alternatives all applied here, even if there was a need to close the courtroom, which we don't necessarily agree with. All right. Mr. Manhouse, you have three minutes rebuttal. You can use it now or you can save it. No, I will save it. Thank you, Your Honor. Further questions? Judge Merrick. All right. Good morning. Good morning. Thank you, Your Honors. And may it please the court, Linus Banghart Lynn, Assistant Attorney General for the State of Michigan, on behalf of the respondent warden, respectfully requesting that this court affirm the district court's denial of habeas relief. There absolutely was probable cause. There was absolutely nothing wrong with this arrest. Now, I know we've raised several different layers of defenses that we have to the first claim, and those are all adequate and any one of those on its own would be enough to affirm the district court. Have you argued in your brief there was probable cause? That argument, I think my brother is correct. I think we kind of let the district court's decision, which that was the basis of the district court's denial of habeas relief, and we raised sort of a number of alternate grounds to affirm. So have you waived the argument by not raising the brief? No, Your Honor, I don't think so. And I think the reason is because this gets to the core of the argument, and you can find case after case where a state in a habeas case has waived a procedural defense, procedural default, statute of limitations, waiver, forfeiture, non-retroactivity. I don't think you can find a case where a habeas court has said, there was no constitutional violation here, but the state failed to argue that there wasn't a constitutional violation here, so we're going to grant habeas relief in the absence of a constitutional violation because of the state's briefing. I don't think that's correct. I think this court has an independent obligation to assure itself that there was actually a constitutional violation before it grants habeas relief, and so I don't think that that can be held against the state, especially in light of the fact that the district court based its ruling. So it's not like this isn't before the court. We have it in the district court opinion, and we never attacked it or disavowed it either. The appellant has argued that there was no probable cause for the arrest, and I want to just focus on that for a moment and go back to those three bases and look at those independently because I think I heard you say that there was definitely probable cause. If you look at any one of these, it's certainly combined there is. But looking first at the confidential informant I think he's styled as, does that tip really amount to a report of a confidential informant under the record? I don't think that that alone, because that alone didn't identify. If I recall correctly, the confidential informant said he was bragging about robbing a party store and other robberies I think was the language in the affidavit. So if you want to say we're arresting him for the robbery of the wireless giant, the robbery of the city financial, I think it would be a tough argument to say, well, he bragged about some robberies and that's enough. Was it a confidential informant or was it a tipster? Because, you know, a confidential informant, there has to be certain reliability that generally that person has given some kind of information before so that there could be a determination of the reliability. And I didn't get that from this record. I just want to know what your position is because we're going to go on to the other two. I don't know because I don't think that issue was ever raised, so we've never really had a chance to look at that. And I would say that even without that piece, even if you remove that from the equation, I think the most powerful thing is you have the victim of the city financial making an identification out of the photographic lineup. Not only a description that meets Mr. Ingram's description, but also picking him out of the lineup, saying this is the man who did it and described his firearm. And next, go to the driving up of the car. Well, the car, exactly. Now, he makes a lot of something of the fact that he was arrested in a different car, but Judge Griffin was right, is that the car that was involved in the wireless giant robbery matched the description of the car that was involved in the mug and jug robbery and the car that was registered to Kim Thomas, and that car pulled up to Mr. Ingram's residence. Now, again, that alone, just because you're a robber and you drive a car to somebody's house, that doesn't mean that person in that house is also a robber. That alone would not be enough. But the fact that that car was used in the wireless giant robbery, the wireless giant victim described one of the robbers in the exact same way as the city financial victim did and identified the handgun in the exact same way as the city financial victim described the handgun. So you've got that correlation between those two victims' description of the robber and the handgun, and then you've also got the car. The car is registered to Kim Thomas. The car also goes to Mr. Ingram's house, and Mr. Ingram is bragging about Now, I did say even if you eliminate that, I think that's kind of the icing on the cake, right? But if we allow that, then you've got that bragging, and those, I think that counts four things that you put all together, or maybe five if you separate the handgun out as a separate thing. So that all leads to probable cause, and that's why the magistrate issued an arrest warrant in St. Clair Shores. And so not only do you have probable cause, but you actually have an arrest warrant. Now, Farmington Hills didn't have that warrant in their hand, but they had information from St. Clair Shores that there was probable cause to arrest him. Okay, they have the arrest warrant, and then I think you make a backup argument of good faith based upon the warrant, do you? Do you make a Leon argument? I think the good faith argument that we've made is that St. Clair Shores, let's assume all of that is wrong, just for the sake of argument. St. Clair Shores still told Farmington Hills there was probable cause to arrest him. And this is not, now the Supreme Court has said, sort of in dicta, that you can't have one officer sort of lie to another officer. Officer A knows there's no probable cause but tells Officer B there is, and then Officer B makes the arrest, and then we say good faith. But there's nothing like that that happened here. If there was any problem, which again our position is there wasn't, it was just a mistake either on the part of Farmington Hills or on the part of St. Clair Shores. Getting to the warrant, I mean, police are allowed to rely on an independent judicial determination of probable cause, and if there is a warrant issued and a finding by a magistrate that there's probable cause, they can act on that warrant unless there's... Absolutely, and I think that's... So that's the Leon good faith defense? Well, and I think... Are you asserting that too? I think Strieff confirms that as well, Utah versus Strieff. The sort of the factual lead up to it was different, but you still had a bad stop, an unconstitutional seizure, and then the police officer discovered that there was a valid warrant for the arrest, and he challenged, Strieff challenged the arrest on the basis that, well, without the stop, you wouldn't have found the warrant, and you wouldn't have arrested me, and the Supreme Court says no when you have a valid warrant. So I think even if Farmington Hills had done something wrong here... Okay, so the warrant came after the stop? The warrant in Strieff... Oh, in this case. No, the warrant was before, but I don't know if Farmington Hills... I don't think the record is... It doesn't matter if they knew about it or not. Right. It's an objective standard under the Fourth Amendment. And that's what I'm... The scenario here is there is an arrest warrant issued by a magistrate that is in effect before the stop. Right. And that's what I'm saying is that whether Farmington Hills knew about the warrant or not... Whether the particular officer knew about it doesn't matter. Correct. The department... Correct. Probably knew about it. The department may have known about it, and the warrant existed anyway, whether anyone knew about it. It seems to me that you're arguing with the court agreeing, I mean, with you. I'm not sure... I think I'm agreeing with Judge Robertson. I know, but you seem to be arguing with the defendant. Oh, I'm sorry. I think the issuance of the warrant might be your strongest case, that's all. I think... Particularly since it's done before the stop. And I guess I read that earlier, but I didn't focus on it. I'm focusing on all the facts here. Right. Three or four indicias of probable cause. Well, we have a magistrate that's already reviewed all this stuff and has found probable cause. Exactly. That's usually a winner for you guys. I think so. I would absolutely rely on that as a winning argument. I guess I see this kind of argument as proceeding in many different layers. And so I wanted to get to the core of it, which is that there was probable cause. Then also there's a warrant. Also there was attenuation. Also we've got the protections of the ineffective assistance standard and then procedural default. What about the court closure argument, the public trial argument? Why don't you go to that? Sure, Your Honor. I think the simplest way, as we've said in the brief to resolve this, is on procedural default. I think we can win either way. Procedural default is the easiest. Presley didn't announce a new rule that's relevant in this case. The new rule in Presley is the voir dire. Presley explicitly said the fact that the court has to consider alternatives even when parties don't raise them is clear from our precedence. That's almost an exact quote from Presley. So the idea that this is a new rule is not correct. And so this should have been raised. I mean, if there were any merit to it, it should have been raised on direct appeal. Either in the counsel brief, it should have been raised in the standard four brief. It should have been raised in the first motion for relief from judgment. And now it doesn't come along until the second motion for relief from judgment. Now, there's this argument that the trial court somehow misapplied Michigan's rules and that's somehow a gotcha past procedural default. The court rules say you can't file a second or successive motion for relief from judgment except as provided in subrule G2. And G2 says if the motion asserts a new rule, then you forward the motion to the judge for a decision. Now, the second motion for relief from judgment asserted that there was a new rule. The assertion was incorrect, but it was perfectly reasonable for the clerk, instead of returning it without filing, to say, this asserts a new rule, send it to the judge. I think that's reasonable. I don't think we want clerks deciding the merits of, well, is this assertion of a new rule legally correct or incorrect? I think that's a determination for a judge. And the judge said, the judge could have said, this isn't a new rule. The judge could have said, this should have been raised earlier. And the latter is what the judge did. The Michigan Supreme Court was the last reasoned decision in the case and says this is barred as a second or successive motion for relief from judgment under G2. That last reasoned decision is what controls. G2 is a procedural rule, right? Correct. There are no merit defenses there. It's all procedural. It's procedural. Yes, I would say so. I think you can infer from it that the Michigan Supreme Court was holding that Presley didn't announce a new rule. But you can also, yeah, the Michigan Supreme Court did not reach the merits of whether the trial court had properly applied the Waller factors. Right? That wasn't in the Michigan Supreme Court's order. It was just, there's no new rule here. You should have raised it before. You didn't. You're out. That was the last reasoned decision. And that's correct. And on the basis of that procedural default, that's enough for this court to affirm. To get to the merits, Presley did say that the court was required to consider reasonable alternatives. Presley did not say the court was required to make an explicit record of having considered reasonable alternatives. And as the district court held, the district court's, sorry, the trial court's treatment of the next witness, Kim Thomas, to testify, shows that this court was not simply rubber stamping the prosecution's requests for courtroom closure. The court was considering this. And that's why the court rejected it when it came to the other witness. How do we know that the court was considering that? Because if the court just said, all right, and then closed it, how do we know that the court is not just adopting the government's argument? Because it's a reasonable inference from the fact that the court didn't just adopt the government's argument when it came time for Mr. Thomas to testify. If that were the court's attitude, not considering reasonable alternatives, then it would have come time for Kim Thomas, the prosecutor, said, we still want to close the courtroom, and the court would have said, well, of course, you're the prosecutor. Did the court say, we still want to close the courtroom? I mean, did the prosecution say that? For Thomas, yes. The prosecution asked for the courtroom to be closed for Kim Thomas' testimony. The court recognized the difference. Contrary to what's stated in my brother's brief, there was a difference recognized between the two witnesses in that Kim Thomas was in Michigan Department of Corrections custody at the time, and so had better security. That supports the argument of a narrow tailoring limited to this one witness. Okay, so what did the court say specifically in regard to Thomas, that the court was not going to close it as Thomas? What did the court say? The court said, and I don't have the quote in front of me, I'm paraphrasing from memory, but the court said that because Mr. Parrish is a private citizen at large, you know, his security, it's more important for his security to close the courtroom, whereas Mr. Thomas is in the custody of the MDOC, and therefore there's more. It adopted the defense counsel's argument, which was that because he's in the custody of the MDOC. So you're saying that ruling on the subsequent witness shows how the district judge was viewing the alternatives for the closure witness? Yes, I think that's absolutely a reasonable inference. The explanation was, you know, after the fact, but you're saying that that showed the reasoning for the closure? Yes, Your Honor. Okay, I'll look at that. And I would also say that although the appellant's brief does contain other alternatives, it doesn't contain any other reasonable alternatives. Three of the alternatives advanced. Do they have to? I mean, I thought that's what Waller versus Georgia was, that the court sui sponte had to consider the alternatives, even if they weren't raised. The trial court, yes. But the appellate court, and I would cite as ‑‑ I don't have any cases from this circuit. I would cite a sister circuit case, which is the United States versus Lede at 762 F. 3rd 224. The second circuit held, and I know that's not binding on this court, but I would assert as persuasive authority that on appeal, the appellant does have to say, if the court had sui sponte considered reasonable alternatives, here is a reasonable alternative it could have adopted. And so the appellant does have that obligation. And they didn't do that in the brief here? They did raise alternatives. I'm saying those alternatives aren't reasonable. Three of them trample on the defendant's constitutional right to confrontation, and we don't know if he would have waived that or not, which is a protective screen, closed circuit TV, or I can't remember the other one, but it's another one where he's not face‑to‑face with ‑‑ the witness is not face‑to‑face with the defendant. The fourth one is that the trial court ‑‑ do you mind if I finish this? Well, my time is up. Sorry, I'll be brief. The trial court would somehow figure out which people in the audience were Mr. Ingram's associates and only exclude them. And that's ‑‑ I think it's pretty obvious that that's not reasonable because you can't figure out who is Mr. Ingram's friend and who isn't, and who poses a threat and who doesn't. And so I don't think that is a reasonable alternative. My time is up. I'd be glad to answer any other questions. Anything else you want to bring to our attention briefly? Just very briefly on the first issue, they've raised no argument on procedural default of ineffective assistance of trial counsel. I think you identified that in your questioning. Trial and appellate counsel are two separate arguments. We've never argued procedural default of appellate counsel, but they haven't argued anything on trial counsel. Okay. Any further questions? Thank you. Thank you, Your Honors. Mr. Mann has three minutes for rebuttal. Thank you, Your Honor. Just to address that point, we did argue that ineffective assistance of trial counsel was excused because of appellate counsel's ineffectiveness. That's in our reply brief. The burden is on the state to bring procedural default arguments. We responded to their argument. There was no forfeiture. Isn't this whole exercise somewhat illogical? In habeas, we cannot review Fourth Amendment claims. The Supreme Court has ruled Fourth Amendment claims are not subject to habeas. However, here, through the back door of ineffective assistance of counsel, we are reviewing Fourth Amendment claims from a state court. Isn't that just logically inconsistent? I don't think it's logically inconsistent because as the state started its argument, they said that there was no constitutional violation here, but there was a constitutional violation. If this were a standalone Fourth Amendment claim, you would agree with me, as a federal court, we could not review it. Would you not? Yes, I believe that's correct. Okay. But isn't it odd that we can review a Fourth Amendment state claim if it's brought on the basis of ineffective assistance? No, because defendant has an independent right to effective assistance of counsel, and that's precisely what was missing here. That was the constitutional violation, ineffective assistance of counsel. To the extent this court has questions about some of these bases that were not raised by the state about why there might be probable cause, it would be perfectly appropriate for this court to order an evidentiary hearing into these issues, which have not been briefed and have not been talked about. Do you know whether there's any case law on the question of whether you can have a Sixth Amendment violation by virtue of having a claimed Fourth Amendment violation that's not cognizable in the federal courts? Do you know of any case law about that? I'm not aware of any case law on that, Judge Merritt, but I would say that I don't think it's been established that there is no cognizable Fourth Amendment violation. There's these theoretical other bases that are now being raised at the 11th hour by the state, and more importantly, the state says that, well, the district court made these findings, the federal district court. But the federal district court applied AEDPA standard of review to issues that were not adjudicated on the merits, and in fact there's no findings about probable cause in the state court proceedings. So we think it would be perfectly appropriate if this court feels like there are perhaps reasons to explore these other bases to order an evidentiary hearing. See, the reason there wasn't an evidentiary hearing on the Fourth Amendment issue is because it was procedurally defaulted. And, I mean, it wasn't raised below, and therefore you didn't have an evidentiary hearing, and now you say because of that we ought to have one. But, I mean, I think it goes back to it's procedurally defaulted. Just to repeat, Your Honor, the violation here is ineffective assistance of counsel. The investigation has to occur to see. Well. That's precisely the investigation a reasonable counsel would have done in those circumstances, and that's what may be appropriate here if the court. All right, you're out of time. Do you want to wrap it up real briefly? Yeah, I just want to briefly address the public trial claim and point out that there was a clear misapplication of Michigan procedural default rules, which rules out the need to show prejudice. It's a structural error. The state said on argument that, well, courts can go address the good cause bar before they address the success of motions bar. That's contrary to Michigan law. We have repeated cases. People be swaying. Because a success of motion for relief from judgment may only be filed if after the first motion there is a retroactive change in law or new evidence that is discovered, the good cause and actual prejudice requirements of MCR 6.508D3 are not relevant until and are only relevant if the trial court determines that the success of motion falls within one of the two exceptions to MCR 6.508D3. So the court could not have moved to that analysis unless it had found one of the exceptions met, and the only one argued here was retroactive change in law. The second point I want to make is the state refers to the Michigan Supreme Court decision as last reason decision. That's not the case. The state erroneously said that it relied on 6.502G2. In fact, it only just cited 6.502G, which is the broader rule, which says that denials of success of motions may not be appealed. So they denied that appeal because it's not within their jurisdiction to make a decision on denials of success of motions. They did not say G2. They cited G. The last reason decision here is the trial court, which misapplied the rules, and we believe that habeas relief is warranted here, Your Honors, and that the district court should be reversed. All right, Mr. Maness, thank you. I notice that you are appointed pursuant to the Criminal Justice Act, and I want to thank you for your service. I appreciate that, Your Honor. Thank you. Thank you. All right, case will be submitted. Let me call the next case.